UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| SHONTA CHARI WILLIAMS BARRE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social ) <br> Security, ) <br> ) <br> Defendant. ) <br> ————————————————— ) | Case No. EDCV 18-00684-AS <br><br> **MEMORANDUM OPINION AND** <br><br> **ORDER OF REMAND** |

**PROCEEDINGS**

On April 4, 2018, Plaintiff filed a Complaint seeking review of the denial of her applications for Disability Insurance Benefits and Supplemental Security Income. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 10-11). On September 21, 2018, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 17-18). On January 7, 2019, the parties filed a Joint

Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 21).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On May 29, 2014, Plaintiff, formerly employed as a medical biller, a medical collector, and a financial counselor for a hospital (see AR 58-69, 303-04), filed an application for Disability Insurance Benefits, alleging an inability to work because of a disabling condition since November 6, 2006. (See AR 225-29). On May 29, 2014, Plaintiff filed an application for Supplemental Security Income, alleging a disability since April 6, 2010. (See AR 230-35). Plaintiff later amended her alleged disability date to May 23, 2014. (See AR 50-51).

On April 4, 2017, the Administrative Law Judge ("ALJ"), Robert Lenzini, heard testimony from Plaintiff (represented by counsel) and vocational expert Sandra Moore Fioretti. (See AR 50-98). On July 5, 2017, the ALJ issued a decision denying Plaintiff's applications. (See AR 28-39). After determining that Plaintiff had severe impairments -- "spondylitis of the cervicothoracic spine; degenerative disc disease of the spine; carpal tunnel syndrome; and infraspinatus tendinosis of the right shoulder" (AR 23)[1] -- but did not have an impairment or combination of impairments that met or equaled the severity of one of the listed

---

[1] The ALJ found that Plaintiff's other impairments -- fibromyalgia, hypertension, migraines, and bilateral foot pain - were nonsevere. (AR 31).

2

impairments (AR 31-32), the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform medium work[3] with the following limitations: can push and pull with the left dominant upper extremity frequently; can reach overhead with the bilateral upper extremities frequently; can handle and finger with the bilateral hands frequently; can climb stairs and ramps frequently; can climb ladders, ropes and scaffolds occasionally; and can balance, stoop, kneel, crouch and crawl frequently. (AR 32-38). The ALJ then determined that Plaintiff was able to perform her past relevant work as an insurance clerk, medical record coder and collections clerk as actually performed and as generally performed in the national econcomy (AR 38) and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 39).

Plaintiff requested that the Appeals Council review the ALJ's decision. (See AR 222, 323-27). The request was denied on February 7, 2018. (See AR 1-6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

3

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).[4]

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in assessing Plaintiff's RFC by failing to properly consider: (1) the relevant medical evidence, including opinion evidence; and (2) Plaintiff's subjective statements and testimony. (See Joint Stip. at 4-10, 19-21).

//

---

[4] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's second claim of error warrants a remand for further consideration. Since the Court is remanding the matter based on a Plaintiff's second claim of error, the Court will not address Plaintiff's first claim of error.

**A.    The ALJ Did Not Properly Assess Plaintiff's Testimony**

Plaintiff asserts that the ALJ did not provide proper reasons for finding that Plaintiff's testimony about her symptoms and limitations was not fully credible. (See Joint Stip. at 19-21). Defendant asserts that the ALJ provided proper reasons for finding Plaintiff not credible. (See Joint Stip. at 21-25).

1.    <u>Legal Standard</u>

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . ." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, *3.[5]

---

[5]    SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the Appeal Council's February 7, 2018 denial of Plaintiff's request for review. 20 C.F.R. § 404.1529, the regulation on
(continued...)

5

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)(the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001)(the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what

---

⁵ (...continued)
evaluating a claimant's symptoms, including pain, has not changed.

evidence undermines the testimony"); Smolen, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

2. Plaintiff's Testimony

Plaintiff gave the following testimony at the administrative hearing (see AR 55-90):

> She is 45 years old, weighs 148 pounds, lives in a house, and is recently divorced. She became a licensed vocational nurse (a 2-year degree) and obtained a vocational certificate to work as a medical coder in 2001. From October 2016 to December 2016, she worked for United Healthcare Services, but she had to stop (based on her doctor's advice) after being hospitalized for spasms and pain in her hands and back caused by her fibromyalgia. For a short time in 2016, she worked on a self-employed basis (through a temporary agency) for a doctor but had to stop working because she caould not afford the necessary medical equipment. In October 2016, she settled a California Worker's Compensation claim (which she had filed based on swelling in her hands). From June 2014 to June 2015, she received State Disability Benefits. For almost 2 years, until May 23, 2014, she worked as a medical biller for Hospital Business Services, where she submitted claims by typing and entering codes on forms, obtained medical records from doctors, and verified insurance eligibility and benefits for patients. Part of that job involved lifting/pushing bills (40 to 50 pounds) two times a day and lifting reams of paper (25 pounds) throughout the day. From 2011 until 2013, she worked as a medical biller for Vibra Hospital, doing the same things she did for Hospital Business Services. In 2010 she worked as a medical biller/collector for Consolidated Healthcare, doing the same things she did for Hospital Business Services and Vibra Hospital. Prior to then, she worked as a medical biller/financial counselor at Loma Linda Hospital, doing the same things but also registering patients and posting payments. In 2007, she worked for two temporary staffing agencies and did billing jobs. In 2004, she worked as a referral coordinator for BBI Holding, where she sought authorizations from insurance companies to obtain medical equipment for patients and entered payments into the system. She also worked as a referral coordinator for GDI Medical, seeking authorizations from insurance companies. In her medical biller and referral coordinator positions, she had to load reams of paper into

7

the printer throughout the day and remove stacks of paper from the printer throughout the day. (See AR 55-71, 76-79).

She is not able to work primarily because she cannot sit for very long (she can sit for approximately 30 minutes before feeling stabbing pain) and because of nerve damage in her hands (she cannot type or grasp a mouse). When she sits, her lumbar spine swells up. She experienced pain sitting at the hearing. In May 2016, as part of her Worker's Compensation case, she saw Dr. Aval, an agreed medical examiner, who found that her disability status was permanent and stationary based on her hands being at 3 percent ability due to nerve damage stemming from the cervical spine. Dr. Thokran, who performed a nerve conduction study, said they wanted to do surgery on her hands, but Plaintiff said she did not want surgery because "it's going to defeat the purpose and my hands are still going to be messed up."). Her back issues (cervical spine and lumbar spine) limit her abilities to stand and walk (she can stand/walk for approximately 20 to 30 minutes). In the past 4 months she has had two incidents in which she had walked too much and her back went out, resulting in her being taken to the hospital in an ambulance. She is not able to lift (more than 20 pounds) or grab things; she has swelling and numbness in her hands (she drops a lot of dishes at home and is in the process of getting in-home care). She wears prescribed wrist splints to support her hands. Her neck and back are swollen, and pain radiates from her neck to her shoulders, down her arms, and into her hands. Her neck pain and back pain are constant. She also is not able to work because of fibromyalgia (diagnosed in 2007) which flares up twice a month, causes a throbbing pain in the back of her neck and head and lower back, and makes her feel like her whole body is on fire. She also is not able to work because of migraine headaches (starting in 2004, but diagnosed in 2007) which occur once a week, last an entire day, cause nausea and vomiting, and cause her to stay out of the light. (See AR 72-88).

She takes pain medication (Tramadol, Gabapentin) and Lidocaine patches for her back. The pain medication helps a little bit, so that she experiences back pain at a level of 7 out of 10. She used to take two medications (including Tramadol) for her fibromyalgia, but she stopped taking one of them because of depression side effects. She used to take two medications (Tramadol and a dissolving medication) for her migraine heaches, but she stopped taking the dissolving medication. (See AR 73-74, 82-84).

Although she has a driver's license, she cannot grab the steering wheel because of nerve damage in her hands. She had to drive to the hearing because she had no other option; she drove slowly and carefully and had to place her wrist in an uncomfortable position. During the day, when not sitting,

she lies on her side for about an hour or so and then stands up for about a minute to stretch. (See AR 57-58, 88-90).

3. The ALJ's Credibility Findings

After summarizing Plaintiff's testimony (see AR 32)[6], the ALJ made the following findings:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above-alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent

---

[6] The ALJ wrote:

The undersigned considered all of the claimant's subjective complaints, including statements from the administrative hearing and disability reports (Exhibits 2D, 4E, 5E, 7E, and Testimony). The claimant's statements in the written submissions mirror the subjective complaints from the claimant's testimony. The claimant alleged that carpal tunnel syndrome, degenerative disc disease, and infraspinatus tendinosis of the right shoulder limited her ability to work. Specifically, the claimant asserted that the impairments caused symptoms such as muscle pain in the hand and back, back spams with radiation to buttocks, back swelling, neck pain, and hand pain. The cliamant furuther noted that difficulty with sitting, standing, walking, grasping, gripping, holding, and typing limited the claimant's ability to work. The claimant asserted she was unable to work due to her alleged impairments. (AR 32-33).

they can reasonably be accepted as consistent with the objecctive medical and other evidence.

The undersigned finds the claimant's allegations concerning the intensity, persistence, and limiting effects of her symptoms are less than fully persuasive based on the claimant's treatment history. Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature. The lack of aggressive treatment or surgical intervention is inconsistent with the claimant's alleged disabling impairments.

More, importantly, the persuasiveness of the claimant's allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence or record, discussed below. The undersigned has reviewed and considered the complete medical history consistent with 20 CFR 404.1512(d) and 416.912(d), including evidence from the period prior to the claimant's alleged onset date (Exhibits 1F - 20F). The treatment records reveal the claimant received routine, conservative, and non-emergency treatment since the alleged onset date. The positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein.
(AR 33).

### 4. The ALJ Failed to Provide Specific, Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Symptom Testimony

As set forth below, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony about the intensity, persistence and limiting effects of her pain and symptoms.[7]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, the ALJ did not properly discredit Plaintiff's testimony based on the determination that Plaintiff had obtained only routine and conservative treatment for her impairments (spondylitis of the cervicothoracic spine, degenerative disc disease of the spine, carpal tunnel syndrome, and infraspinatus tendinosis of the right shoulder). See Childress v. Colvin, 2014 WL 4629593, *12 (N.D. Cal. Sept. 16, 2014)("There is no guiding authority on what exactly constitutes 'conservative' or 'routine' treatment."); Boitnott v. Colvin, 2016 WL

---

[7] The Court will not consider reasons for discounting Plaintiff's subjective symptom testimony that were not given by the ALJ in the decision (see Joint Stip. at 24-25). See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts."; citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) and Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)); Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014)("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

362348, *4 (S.D. Cal. January 29, 2016)(explaining that "[t]here was no medical testimony at the hearing or documentation in the medical record that the prescribed medication constituted 'conservative' treatment of [the plaintiff's] conditions," and that the ALJ "was not qualified to draw his own inference regarding whether more aggressive courses of treatments were available for Plaintiff's conditions"). At the hearing, the ALJ did not ask Plaintiff why the treatments for her impairments were conservative, or why she had not obtained other kinds of treatments for her impairments. Moreover, the ALJ did not address Plaintiff's testimony that (1) the prescribed medications for her back pain did not substantially reduce her pain, and (2) Dr. Thokran recommended surgery on Plaintiff's hands which Plaintiff declined. Moreover, although Plaintiff did not have surgery on her neck, as the ALJ noted (see AR 7), the record reflects that on November 8, 2016, Plaintiff did inquire into having neck surgery. (See AR 525). Finally, it is not clear that the treatments for Plaintiff's impairments were conservative, and the record does not reflect the appropriateness or availability of more aggressive treatment options. For her degenerative disc disease and cervical spondylosis, Plaintiff was prescribed Naproxen and Tramadol, and received epidurals in her cervical spine (see AR 500, 527, 542); and for her carpal tunnel syndrome, Plaintiff was prescribed Naproxen and Tramadol, and was referred to a hand surgeon for consultation (see AR 486, 491, 551, 610). See Lapeirre-Gutt v. Astrue, 382 Fed.Appx 662, 664 (9th Cir. 2010)(treatment consisting of copious amounts of narcotics, occipital nerve blocks, and trigger point injections not conservative).

Third, while the ALJ also found that there was a lack of objective medical evidence supporting Plaintiff's testimony concerning her symptoms and limitations, this factor cannot, by itself, support an adverse finding about Plaintiff's testimony. See Trevizo v. Berryhill, 862 F.3d 987, 1001 (9th Cir. 2017)(once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'"; quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); see also SSR 16-3p, 2017 WL 5180304, *7 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.... However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment related-symptoms alleged by the individual.").

Because the Court finds that the the ALJ did not discount Plaintiff's symptom testimony on legally permissible grounds, the Court is unable to defer to the ALJ's credibility determination. Cf. Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995)(the court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by specific findings justifying that decision)(citations omitted).

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's symptom testimony, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[8]

---

[8] The Court has not reached any other issue raised by Plaintiff except to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claim regarding the ALJ's error in failing to properly consider the relevant medical evidence, including opinion evidence, in assessing
(continued...)

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 27, 2019

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[8] (...continued)
Plaintiff's RFC (see Joint Stip. at 4-10). Because this matter is being remanded for further consideration, this issue should also be considered on remand.